# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Samuel Der-Yeghiayan | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1857 | **DATE** | 3/15/2004 |
| **CASE TITLE** | Melvin Williams vs. Atrium Village | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Status hearing held. For the reasons stated in the attached memorandum opinion, the Court hereby grants the defendant's motion for summary judgment on all counts. All pending dates and motions are hereby terminated as moot. Terminating case. Enter Memorandum Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

number of notices

3-16-04 date docketed

96 docketing deputy initials

date mailed notice

U.S. DISTRICT COURT
CLERK
2004 MAR 16 AM 8:18

| MW | courtroom deputy's initials |
|---|---|

Date/time received in central Clerk's Office

mailing deputy initials

Document Number

20

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MELVIN WILLIAMS,, )
)
        Plaintiff, )
)
        v. )    No. 02 C 1857
)
ATRIUM VILLAGE, )
)
        Defendant. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Atrium Village's ("Artium")

motion for summary judgment. For the reasons below, we grant summary judgment

on all counts.

## BACKGROUND

Atrium is a residential apartment complex located in Chicago, Illinois.

Atrium hired Melvin Williams ("Williams") on July 24, 2000 as an Assistant Head

Janitor. As a new employee, Williams' employment was probationary for 90 days.

In late September of 2000, Atrium's Head Janitor resigned. While searching for a

1



Head Janitor, Defendant temporarily assigned Williams as Acting Head Janitor, from October 2, 2000 through October 20, 2000.

Williams indicated to Nancy Spira ("Spira"), the General Manager of Atrium, that he was interested in the permanent Head Janitor position. Williams underwent a brief informal interview with Spira, and she later reviewed his initial job application and resume. However, at the conclusion of the hiring process, Spira chose Andy Ibell ("Ibell") for the Head Janitor position. Spira claims that she chose Ibell because of his experience as a Head Janitor and their prior relationship. Spira believed Ibell had already proven his capabilities working at Atrium as an Assistant Head Janitor. Ibell left that position in October 1999 to pursue a position as a Head Janitor at another residential apartment complex. Spira and Ibell also had a working relationship at a different property. On October 16, 2000, Spira explained to Williams that she gave Ibell the position as Head Janitor. Just a week later, on October 23, 2000, Ibell officially began working as Head Janitor and Williams resumed his position as Assistant Head Janitor.

As a member of the janitorial and maintenance staff at Atrium Village, the terms and conditions of Williams' employment are governed by the Collective Bargaining Agreement ("CBA") between Atrium and the Service Employees International Union, Local No. 1. The CBA outlines Williams' duties, which

included working weekends and assisting the Head Janitor in performing cleaning work. The CBA explicitly defines the Assistant Head Janitor's Duties as assisting the "Head Janitor in the performance of his duties and responsibilities." These duties and responsibilities are likewise set forth in the CBA and include "work involved in the maintenance, cleaning, servicing, heating, and operation of the premises." Additionally, Atrium required Williams' participation in the on-call employee system, which involved immediate response to tenant problems occurring after hours and over the weekend.

From July 24, 2000 through February 17, 2001 Williams' weekly work schedule consistently began on Monday and concluded on Friday. Pursuant to the CBA, Atrium maintained the right to schedule employees to meet its needs. From February 2001 through January 2002, Atrium temporarily altered Williams' work schedule. Atrium claims it altered his schedule in order to provide weekday technical training for Lemont Brown. Williams' compensation rate, job title, and responsibilities remained the same during the temporary schedule change. The new schedule required Williams to work weekends, reporting for work on Friday and finishing on Tuesday. On Fridays, Mondays, and Tuesdays, Atrium expected Williams to perform his normal weekday duties by completing tenant work orders. Over the weekend, Williams' duties included cleaning, maintenance work and

responding to tenant emergency requests. Atrium additionally required Williams to complete Daily Report Sheets and Emergency Maintenance Logs explaining his weekend work. Atrium required these reports because the management office is closed over the weekend making it impossible to fill out work orders. To encourage employees to complete the Daily Report Sheets, Atrium distributed a memorandum reminding all employees to complete these sheets or face discipline. Williams often failed to complete the Daily Report Sheets, receiving a written warning on October 5, 2001. From December 2000 to August 2002, Atrium disciplined Williams on numerous occasions. Finally, on August 14, 2002, Atrium terminated Williams when he refused a security guard's request to return to the apartment complex and let a locked out tenant into his apartment and then failed to arrive in the morning as he stated he would to let in the tenant.

On August 31, 2001, Williams filed a Charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). However, the EEOC dismissed his claim on December 18, 2001. Williams then filed a civil compliant in the Northern District of Illinois on March 14, 2002 claiming that Atrium failed to promote him because of his race, demoted him because of his race, and disciplined him on certain occasions in retaliation for the filing of his EEOC charge in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C.§ 2000e *et seq.* Count I

4

seeks relief for violation of Title VII based upon the failure to promote Williams. Count II seeks relief for violation of Title VII based upon his alleged demotion. Count III seeks relief for violation of Title VII resulting from alleged acts of retaliation after Williams filed his EEOC charge.

## LEGAL STANDARD

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." *Id.* at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A "genuine issue" in the context of a motion for

summary judgment is not simply a "metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*, 475 U.S. 574, 586 (1986).

Rather, a genuine issue of material fact exists when "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty

Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596,

599 (7th Cir. 2000). The court must consider the record as a whole, in a light most

favorable to the non-moving party, and draw all reasonable inferences that favor the

non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212

F.3d 969, 972 (7th Cir. 2000).

## DISCUSSION

### I. Local Rule 56.1

In the Northern District of Illinois, parties must comply with Local Rule 56.1.

Compliance requires "a statement of material facts as to which the moving party

contends there is no genuine issue and that entitle the moving party to a judgment as

a matter of law." Local Rule 56.1 (a)(3). The statement of material facts is

comprised of "short numbered paragraphs, including within each paragraph specific

references to the affidavits, parts of the record, and other supporting materials relied

upon to support the facts set forth in that paragraph." Local Rule 56.1(a). The non-

movant is correspondingly obligated to submit, "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon. . . ." Local Rule 56.1 (b)(3)(A). The non-moving party is also required to file a material statement of additional facts and the moving party is required to respond in a likewise fashion. Local Rule 56.1 (a) & (b)(3)(B). The court will deem any fact admitted in the opponent's statement of facts unless the fact is properly denied by the opposing party. Local Rule 56.1 (a) & (b)(3)(B).

The courts are not "obliged in our adversary system to scour the record looking for factual disputes and may adopt local rules reasonably designed to streamline the resolution of summary judgment motions." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994). A denial is improper if the denial is not accompanied by specific references to admissible evidence or at least evidence that represents admissible evidence. *Dent v. Bestfoods*, 2003 WL 22025008, at *1 n.1 (N.D. Ill. 2003); *Malec v. Sanford*, 191 F.R.D. 581, 585 (N.D. Ill. 2000). Pursuant to Rule 56.1 any facts included in a party's statement of facts that are not properly denied by the opposing party are deemed to be admitted. Local Rule 56.1; *Dent*, 2003 WL 22025008, at *1 n.1. *See also Jankovich v. Exelon Corp.*, 2003 WL 260714, at *5 (N.D. Ill. 2003)(indicating that evasive denials are improper and thus

the contested fact is deemed to be admitted pursuant to Local Rule 56.1).

In this case, we note that although Williams responded to some of Atrium's statement of facts, he did not follow the requirements of Local Rule 56.1 and respond in corresponding numbered paragraphs. Instead Williams numbered his own responses independently and within each response he specifically addressed one of Atrium's material facts. Also, Williams did not file a statement of additional facts. Williams filed a brief entitled "Statement of Material Facts" which would lead one to conclude that it was his statement of additional facts. However, the brief is actually devoted to responding to Atrium's statement of facts and thus constitutes Williams' 56.1 response brief to Atrium's statement of facts. Williams also filed a brief entitled "Answer to Defendants [sic] Summary Judgment [sic] and Request for Trial by Jury." Although Williams mentions Local Rule 56.1 at the beginning of the brief, the brief consists of general legal conclusions and legal arguments, neither of which are appropriate for a Local Rule 56.1 statement of facts or response. Therefore, the brief is appropriately deemed as supplement to his answer brief for the instant motion which Williams mislabeled "Defendant's Memorandum in Support of Denial of Summary Judgment."

Williams repeatedly failed to comply with the requirements of Local Rule 56.1 in his response. Specifically, Williams ignored his obligation to respond to

8

each numbered paragraph in the moving party's statement of material facts. Of the 70 paragraphs Defendant included in its statement of material facts, Williams failed to include responses for 26 paragraphs and admitted many more by improperly denying paragraphs sometimes indicating that they are merely irrelevant or unjustified. To the extent that Williams even attempted to address Atrium's statement of facts, Williams regularly failed to provide a definitive denial and failed to provide proper citations to support denials.

## II. Discrimination Claims

Title VII provides that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . ." 42 U.S.C. § 2000e-2(a)(1). A Plaintiff bringing a Title VII discrimination case may show discrimination through direct evidence, or indirectly, through the *Mc-Donnell-Douglas* inferential burden-shifting method. *Pafford v. Herman*, 148 F.3d 658, 665 (7th Cir. 1998). Under the direct approach, the plaintiff may present either direct or circumstantial evidence to show workplace discrimination. *Id.* Under the indirect method, the plaintiff must establish a *prima facie* case. *Id.* To establish a *prima*

*facie* case of race discrimination a plaintiff must show: "(1) that [h]e was a member of a protected class; (2) that [h]e was performing h[is] job satisfactorily; (3) that [h]e experienced an adverse employment action; and (4) that similarly situated individuals were treated more favorably." *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002).

If the plaintiff established a *prima facie* case "the burden of production [shifts] to the employer to articulate some legitimate, nondiscriminatory reason for its actions." *Grayson v. City of Chicago*, 317 F.3d 745, 748 (7thCir. 2003). Once the employer successfully shifts the burden by providing a legitimate reason for its action, the plaintiff then bears the burden of "demonstrat[ing] to the jury that the reason proffered by the employer was mere pretext, an explanation designed to obscure the unlawful discriminatory employment action." *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 629 (7th Cir. 1996). Failure to establish the pretextual nature of the defendant's justification is grounds for summary judgment. *Hilt-Dyson v. City Of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002). Williams does not have sufficient evidence to proceed under the direct approach and will therefore need to proceed under the indirect approach.

## A. Demotion

Williams cannot establish a *prima facie* case for discrimination based upon his demotion because no reasonable trier of fact could conclude that he met his employer's legitimate work expectations. There were numerous disciplinary actions taken against Williams between December 2000 and August 2002. In Atrium's Local Rule 56.1 statement of material facts, Defendant explicitly cites numerous incidents where Williams failed to perform his employment duties. Pursuant to Local Rule 56.1 Williams admits that in December 2000 he received a verbal warning for failing to respond to a telephone call to perform a work request when he was on call. (SF 31). Williams denies the fact in his 56.1 response but in support of his denial he cites his entire deposition without specifying a page number which is improper and he also cites paragraph 9 of Spira's affidavit which actually supports Atrium's statement of fact 31. Williams also admits pursuant to Local Rule 56.1 that on July 2001, while on-call, he "ignored a serious and dangerous water leak in the kitchen of a tenant's apartment by instructing a doorman to tell the tenant to stay out of the kitchen until Monday" and that "based upon this disregard of his duties, Williams received a written warning." (SF 36, 37). Williams denies statement of fact 36, but not fact 37. In support of his denial he cites his entire deposition without a page number and Spira's Affidavit paragraph 12 which actually supports Atrium's

11

statement of fact number 36 and was cited by Atrium in its statement of facts. Williams again denies fact number 36 in his 56.1 response but fails to provide any citation to support his second denial.

Williams admits pursuant to Local Rule 56.1 that in October 2001, he "failed to perform a work order to unclog a tenant's kitchen sink because the tenant left dishes in the kitchen sink, despite a prior memorandum distributed to all employees to timely respond to all work orders." (SF 39). He received a three-day suspension for the sink incident. (SF 40). Williams argues that he did not unclog the sinks because the counters were filled with pots and pans, and the only place that he could have placed the dishes that were in the sink was on the floor. However, Spira found this an inadequate excuse to justify Williams' failure to perform his assigned duty. Spira indicated that the proper action was to put the dishes on the floor. We find nothing unreasonable in Spira's determination and in any case we are not sitting in this case as a "super-personnel department" to review Atrium's decisions and determine if we would supervise Atrium's employees in the same manner. What matters is that in this instance William's failed to perform his job satisfactorily in accordance with Atrium's reasonable expectations.

Williams admits that he "repeatedly failed to complete the Daily Report Sheets" even after being told in writing on a prior occasion to do so and Williams

received a written warning on October 5, 2001 for the infraction. (SF 62). Williams fails to deny Atrium's material fact number 62 and merely asserts that the fact is irrelevant. He also asserts in his 56.1 response that, since Saturday and Sunday were outside his normal work schedule, his repeated failures to fill out report sheets should be excused. Fact number 62 is indeed relevant as to whether Williams was performing his job satisfactorily and his poor performance is not excused simply because it occurred on a Saturday or Sunday when he was scheduled to work. Williams admits that he "failed to come on-site to respond to a tenant's malfunctioning air conditioning unit at approximately 8:00 p.m. on August 11, 2002, and he treated the tenant in an unprofessional manner." (SF 66). Williams does not deny Atrium's material fact number 66. He merely indicates that the fact is "unjustified." To the extent that it can be inferred that he denies the fact, he provides no citation to support any denial. Finally, Williams admits that he "was discharged on August 14, 2002 because he refused to come on-site to let a locked-out tenant into his apartment when called by the security guard on duty and then failed to arrive later that morning to let the tenant into his apartment as he said that he would do." (SF 65). Williams does not deny Atrium's statement of fact number 65. He instead states that Atrium's statement of fact number 65 "is a clear violation of title [sic] VII of the Civil Rights Act of 1964 and 42 U.S.C. section 1981 . . . ."

and makes further legal arguments that are inappropriate for a response to a 56.1 statement of facts. To the extent that it can be inferred that Williams denies statement of fact number 65 Williams does not provide citations to support some of his assertions and the only citations provided for his denials are an exhibit that does not support the denials. Williams fails to specifically deny that he was called in by a security guard to open an apartment, but failed to do so, and then failed to arrive later in the morning to let the tenant in as promised. Therefore, we find that no reasonable jury could find that Williams was meeting his employer's reasonable expectations at the time of the disciplinary actions.

We note that even if Williams had complied with Local Rule 56.1, Williams has failed to point to evidence that would convince a reasonable trier of fact that he was meeting his employer's legitimate expectations. Williams admits in his answer to the instant motion that he was required to assist the Head Janitor in the performance of his duties and responsibilities and Williams admits that the Head Janitor performed tasks relating to the maintenance, cleaning, servicing, heating, and operation of the premises. Williams fails to address any of Atrium's allegations regarding his poor work performance. He only asks the court to disregard any poor work performance on the weekends because Williams does not believe that he should have been made to work on the weekends. Atrium asserts and Williams does

not deny that Williams was asked to work on Saturday and Sunday so that a recently hired janitor could be trained and because Atrium needed a more experienced employee for Saturday and Sunday. Williams' only response in his 56.1 response to Atrium's contention is that Atrium could have used Jose Mendoza instead of Williams for weekends. Such an argumentative denial is insufficient to create a genuine dispute of material fact.

Even if Williams could establish that he met Atrium's legitimate work expectations, he failed to show that he in fact was demoted and failed to show that he suffered an adverse employment action in this regard. Williams failed to show that he was demoted simply because his work schedule was altered and because of the jobs he was required to perform. Adverse employment actions do not include "mere inconvenience[s] or an alteration of job responsibilities." *Oest v. Illinois Department of Corrections*, 240 F.3d 605, 612 (7th Cir. 2001) (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). A materially adverse action may be "a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss in benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Oest*, 240 F.3d at 13.

Williams argues that Atrium demoted him by changing his schedule for more

than sixty days and requiring maintenance duties not included in his employment contract during that period. In response, Atrium contends that the CBA permits rescheduling of employees and all duties required of Williams were consistent with the CBA. Williams admits that Atrium may reschedule employees as part of its management right under the CBA. ( R SF 20, SF 48). Williams argues that Ibell rescheduled Williams' work days, but only Atrium had the authority to reschedule his work days under the CBA. However, Williams has failed to provide evidence that Ibell was responsible for his rescheduling and Williams has failed to show that if Ibell did the rescheduling that it violated the CBA. In any event Williams admits that the CBA allowed his employer to reschedule his work days. The rescheduling did not constitute an adverse employment action merely because it made Williams unhappy. *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996)(stating that "not everything that makes an employee unhappy" constitutes an adverse employment action).

Additionally, the CBA clearly delineates the duties of the Assistant Head Janitor. In a somewhat convoluted manner, Williams argues that Atrium could not require him to complete maintenance and cleaning duties during his weekend schedule. However, Williams admits that the CBA requires the Head Janitor to "transmit the employer's direction and instructions in respect to the performance of

the work involved in maintenance, cleaning, servicing, heating and operation of the premises." ( R SF 16, SF 44) . Williams also states that the Assistant Head Janitor's duties included "assist[ing] the head janitor" in the performance of his duties. ( R SF 16, SF 44). Williams admits that "[b]y virtue of the explicit language of the [CBA], Williams was required to perform cleaning work and maintenance work as part of his duties as an Assistant Head Janitor." (SF 44). Plaintiff has presented no evidence from which a reasonable jury could conclude that the Assistant Head Janitor's duties did not include maintenance and cleaning duties or Atrium diminished his material responsibilities. Rather, it is clear that instead of diminished responsibilities, Plaintiff simply had additional temporary duties during the weekend as required by his employment contract. Therefore, we find that Plaintiff has failed to establish an adverse employment action by way of demotion.

Williams failed to establish that Atrium treated him less favorably than an employee outside his protected class who is similarly situated. In order to establish a *prima facie* claim of discrimination by demotion the plaintiff must prove, among other things, that Atrium treated a similarly situated non-African American more favorably. *Patton v. Indianapolis Public School Board,* 276 F.3d 334, 338 (7th Cir. 2002). Similarly situated employees are those "directly comparable to h[im] in all material respects." *Ajayi v. Aramark Business Servs.,* 336 F.3d 520, 531-32 (7th Cir.

2003)(quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002)). Nowhere in the summary judgment record does Williams point to any individual treated more favorably than him.

Even if we assume that Williams intended to argue that Atrium treated Jose Mendoza more favorably, the comparison is faulty. Plaintiff has offered no evidence about Mendoza's job title, responsibilities, experience, or disciplinary record. Thus, there is no evidence to show that either Williams or Mendoza was similarly situated or that Atrium treated Mendoza more favorably. With this is mind, we find that Williams fails the fourth element of his *prima facie* claim because he provides no evidence of any similarly situated non-African American employee treated more favorably.

If a plaintiff establishes his *prima facie* case there is a rebuttable presumption of discrimination and the employer must provide a legitimate non-discriminatory reason for the adverse employment action. *Cianci v. Pettibone Corp.*, 152 F.3d 723, 726 (7th Cir. 1998). Once the employer has provided such a legitimate justification, the employee must demonstrate the pretextual nature of the proffered justification. *Id.* We quickly note that even if Williams could establish a *prima facie* case of racial discrimination by demotion, Atrium presents a legitimate non-discriminatory reason for changing Williams' work schedule. Atrium asserts that it temporarily

altered Williams' schedule so that Lemont Brown, a newly hired janitor, could be trained in performing repair work. (SF 49). Williams denies Atrium's statement of material fact number 49, but his only citation in support of his denial is to page 11, line 12 of Ibell's deposition which actually supports fact number 49. Atrium also claims that it asked Williams to work on the weekends because it needed a more experienced employee to handle weekend work. (SF 50). Williams denies Atrium's statement of fact number 50, but after his initial denial the remainder of his response does not support his denial of number 50. Instead Williams asserts that Atrium could have chosen another employee. The fact that another experienced employee was available for the weekends in no way alters the truthfulness of Atrium's assertion that it picked Williams because of his experience. We are not sitting as a super-personnel department to simply decide whether or not we would have made the same business choices.

In his answer to the instant motion Williams admits that he has no basis to assert that Atrium's reason was pretextual. Williams fails to point to any evidence that would show the reason was a pretext. Instead Williams merely argues that the reason was a pretext because none of the reasons given by Atrium were legitimate non-discriminatory reasons. As indicated above, the given reasons were legitimate non-discriminatory reasons. Therefore, we grant summary judgment on the

discrimination claim based on an alleged demotion.

### B. Failure To Promote Claim

Atrium asserts that Williams' failure to promote claims is barred because he did not file his EEOC charge within 300 days of the alleged discriminatory act. In Illinois, a plaintiff must present a complaint to the EEOC within 300 days of the allegedly discriminatory act. *See* 42 U.S.C. § 2000e-5(e); *Koelsch v. Beltone Elecs. Corp.*, 46 F.3d 705, 707 (7th Cir. 1995). Failure to comply with this requirement bars litigation over the claim, absent an exception. *Patt v. Family Health System, Inc.*, 280 F.3d 749, 752 (7th Cir. 2002).

Since Williams filed his failure to promote charge with the EEOC on August 31, 2001, any alleged conduct prior to November 4, 2000 is time-barred and cannot form the basis of a Title VII failure to promote suit. Atrium's statement of material facts asserts, "Spira informed Williams of the decision to hire Ibell on October 16, 2000, and Ibell began work as Head Janitor at Atrium on October 23, 2000." (SF 23). Pursuant to Local Rule 56.1 Williams admits paragraph twenty-three because he failed to respond to the fact in his 56.1 response. Thus, Williams knew that Spira hired Ibell on October 16, 2000 and a timely EEOC complaint for failure to promote was required by August 13, 2001 (August 12, 2001 was a Sunday). Even if on

October 16, 2000, Spira failed to explain that Ibell had been hired for the Head Janitor position, Ibell began work on October 23, 2000 and Williams still missed the 300-day statute of limitations. In such an instance the filing of the EEOC complaint would have been required no later than August 20, 2001. (August 19, 2001 was a Sunday). Therefore, Williams EEOC charge is untimely and he is thus barred from bringing his Title VII failure to promote claim.

In response, Williams argues that Atrium should be equitably estopped from raising the statute of limitations claim as a bar to his failure to promote count because Defendant misled him. Although Williams is correct that the 300-day limitation may be extended where the defendant misled the plaintiff, in this case there are no facts to support such a theory. A theory of equitable estoppel requires "that the defendant takes active steps to prevent the plaintiff from suing in time, ... such as by hiding evidence or promising not to plead the statute of limitations." *Speer v. Rand McNally & Company*, 123 F.3d 658, 663 (7th Cir. 1997) (quoting *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 (7th Cir. 1995)). Williams failed to point to any evidence that shows that Atrium took steps to prevent him from timely filing or improperly persuaded him not to file his EEOC claim in the required 300-day period, or to any other conduct that would justify equitably tolling the limitations period. Therefore, we grant summary judgment on Williams' failure to

promote claim.

Even if Williams had satisfied the 300-day statute of limitations, he ultimately is unable to satisfy the *prima facie* case for failure to promote. To establish a *prima facie* claim for failure to promote, the plaintiff must show "(1) he belongs to a protected class; (2) he applied for and was qualified for the position sought; (3) he was rejected for that position; and (4) the employer granted the promotion to someone outside of the protected group who was not better qualified than the plaintiff." *Grayson*, 317 F.3d at 748. For the reasons given below, we believe that Williams fails the fourth element of his *prima facie case.*

Williams has not shown that he is equally or more qualified than Ibell for the Head Janitor position. Williams argues that he has substantial experience as a Head Janitor and Atrium ignored this experience when it hired Ibell, deciding on race rather than experience. Nothing in Plaintiff's Local Rule 56.1 statement of material facts, except his bare assertions, shows he has any experience as a Head Janitor. Atrium contends that Spira considered Williams' application and reviewed his resume while deciding how to fill the vacancy. Neither of these documents indicated that Williams had any experience as a Head Janitor. Williams passionately denies that his resume and application lacked references to a Head Janitor position, but the documents plainly refute his contention. Of the six jobs cited in plaintiff's resume,

not one describes a position as Head Janitor. Accordingly, pursuant to Local Rule 56.1, this court deems admitted Atrium's assertion that Williams' resume and job application lacked reference to experience as a Head Janitor position. The undisputed evidence demonstrated that Williams did not have any prior experience as a Head Janitor. Thus, Williams is left with nothing but his own assertion that he had experience as a Head Janitor. Williams did not provide facts by way of deposition, affidavit, or otherwise showing where he worked as a Head Janitor or how long he worked as a Head Janitor. Without any supporting evidence these assertions are unpersuasive and do not create a genuine issue suitable for trial.

On the other hand, Atrium's Local Rule 56.1 statement of material facts shows that Ibell worked for five years as an Assistant Head Janitor at Atrium leaving in October 1999. After leaving Atrium Village, Ibell accepted a position as a Head Janitor at another apartment complex. In October 2000, Ibell returned to Atrium Village accepting the position as the new Head Janitor. Williams' Local Rule 56.1 statement of material facts contains no facts disputing Ibell's experience. Viewing the evidence in a light most favorable to Williams, we do not believe that a jury could reasonably infer that Plaintiff's experience as a Head Janitor is equivalent to or greater than Ibell's.

## III. Retaliation Claim

Williams claims that Atrium retaliated against him because he filed his EEOC charge. Before reviewing Plaintiff's retaliation claim, we think it is prudent to note that Atrium's arguments in part focused on a hostile work environment claim. Williams' complaint states that because he filed an EEOC charge Atrium "harassed" him. In response, Atrium argues that Williams never suffered any offensive racial comments or actions creating an environment so severe and pervasive that it altered the terms and conditions of his employment. We agree with Atrium. However, Williams never included a claim of hostile work environment in his complaint. We believe under the required liberal reading for *pro se* pleadings, *McCormick v. City of Chicago*, 230 F.3d 319, 326 (7th Cir. 2000), that by stating harassment for filing an EEOC charge Williams intended to complain of retaliation rather than harassment in the form of racial comments. With this issue settled, we proceed to an analysis of Plaintiff's retaliation claim.

Atrium argues that this court should prohibit Williams from arguing retaliation because the claim is beyond the scope of his EEOC charge. Specifically, Atrium argues that Williams' EEOC charge never alleged retaliation or even facts supporting a claim that Atrium retaliated against him for filing the EEOC charge. As a corollary of this argument, Defendant asserts that this court cannot reasonably

infer retaliation from the EEOC charge. For the reasons provided below, this court finds that a plaintiff is not required to file a separate EEOC charge alleging retaliation resulting from filing the initial EEOC charge.

As a general rule, Atrium is correct that a Title VII plaintiff may not bring "claims in a lawsuit that were not included in her EEOC charge." *Cheek v. Western & Southern Life Insurance Co.*, 31 F.3d 497, 500 (7th Cir. 1994) (quoting *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, (1974)). According to the Seventh Circuit, this rule not only warns the employer of the alleged conduct, but also provides a mechanism for the EEOC and the employer to settle the disputed claim "through confrontation, conciliation, and persuasion." *Cheek*, 31 F.3d at 500. This rule is a condition precedent which Title VII plaintiffs must comply with. *Id.* at 500 (citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 864 (7th Cir. 1985)). Conversely, if this court allowed complaints to encompass counts beyond the scope of the EEOC charge, the court would "frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Cheek*, 31 F.3d at 500. Although it is true that a plaintiff is prohibited from asserting claims that exceed the scope of his EEOC charge, the Seventh Circuit does not require an employee to file a new EEOC charge alleging retaliation resulting from the filing of the original EEOC charge. *Gawley v. Indiana University*, 276 F.3d 301, 314 n.8 (7th Cir. Ind.

2001). Therefore, Williams' retaliation charge is preserved for civil suit.

Under Title VII, an employer is prohibited from retaliating against any employee who has "opposed any practice made an unlawful employment practice by this subchapter or ... has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing" under this statute. *See* 42 U.S.C. § 2000e-3(a). Thus, it is unlawful for an employer to discriminate against an employee bringing an EEOC charge. A plaintiff can establish a *prima facie* case for retaliation under the direct or indirect method of proof. *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). Williams has not presented evidence sufficient to proceed under the direct method and will need to proceed under the indirect method of proof. A plaintiff can establish a *prima facie* case under the indirect method by showing that: 1) he engaged in protected activity, 2) his job performance met the legitimate expectations of his employer, 3) his employer took a materially adverse employment action against him, and 4) he was treated less favorably than similarly situated employees that did not engage in the protected activity. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002)(citing *Stone v. City of Indianapolis Pub. Utils. Div. Div.*, 281 F.3d 640, 644 (7th Cir. 2002)). If a plaintiff establishes a *prima facie* case then the burden shifts to the defendant to produce a legitimate non-discriminatory reason and if one is produced,

26

the burden shifts back to the plaintiff to show that the given reason is a pretext for discrimination. *Id.* Williams has not provided sufficient evidence to proceed under the direct method of proof and will need to proceed under the indirect method.

The parties do not dispute that Williams engaged in protected activity when he filed his EEOC charge. However, as indicated above there is ample evidence showing that Williams failed to perform his work satisfactorily. Williams failed to point to sufficient evidence that would enable a reasonable trier of fact to conclude that he performed his work satisfactorily. Neither has Williams shown that a similarly situated employee was treated differently. Lastly, Atrium has offered a legitimate non-discriminatory reason for Williams' suspensions and termination. Williams has not provided sufficient evidence for a reasonable trier of fact to conclude that Atrium's reason was a pretext. Williams apparently believes that his treatment by Atrium was unfair however this court is "… not a super personnel board and … we may not punish an employer for choices that constitute business decisions alone, no matter how unwise or mistaken they may seem to us." *Alexander v. Wisconsin Dept. of Health and Family Services,* 263 F.3d 673, 683 (quoting *Guerrero v. Ashcroft,* 253 F.3d 309, 314 (7th Cir. 2001)). Williams must show that Atrium's given reason was a pretext in order to unlawfully discriminate in violation of Title VII, and he has not done so. Therefore, we grant summary

judgment on the retaliation claim.

## CONCLUSION

Based on the foregoing analysis, we grant Defendant's motion for summary

judgment in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated:   March 15, 2004